## STATE EX REL. ARTHUR B. KONS v. RALPH H. TAHASH.*

161 N. W. (2d) 826.

October 4, 1968—No. 40,844.

\* Certified to U. S. Supreme Court December 30, 1968.

*Rischmiller & Wasche* and *Robert William Rischmiller*, for appellant.

*Douglas M. Head*, Attorney General, *Richard H. Kyle*, Solicitor General, and *David J. Byron*, Special Assistant Attorney General, for respondent, warden of State Prison.

OTIS, JUSTICE.

These habeas corpus proceedings seek to review a conviction for murder in the second degree based on an arraignment and plea of guilty entered on January 13, 1941, which resulted in a life sentence. The issues are: (1) Whether the court's failure to interrogate relator with respect to the facts of the crime requires a remand and rearraignment; (2) whether the proceedings were fatally defective because the plea of guilty was entered by counsel and not by relator; and (3) whether or not defendant was deprived of his constitutional right to counsel by the brevity of his consultation with his attorney.

At the outset we acknowledge a concern, shared by the lower court, with respect to the cursory manner in which the trial court conducted the arraignment. The procedures followed fell short of what is ordinarily to be expected in charging a defendant with a crime of this gravity. Nevertheless we have concluded that the record as a whole does not compel a finding that defendant was denied his constitutional rights or that the conviction constituted a miscarriage of justice.

At the habeas corpus hearing, the relator made sweeping claims regarding his record and the events which occurred at the arraignment, nearly all of which were subsequently retracted or conclusively impeached. As a result, the trial court rejected all of relator's testimony except as it was "corroborated by other believable testimony." In effect, relator initially testified that he had no prior felony convictions, that he pled not guilty at the arraignment, that he did not sign a confession, and that he objected to the plea of guilty entered for him by his attorney.

The crime for which relator was convicted occurred on December 11, 1940, in Goodhue County. Relator was taken into custody near Stevens Point, Wisconsin, by Minnesota officers on January 9, 1941, and was removed to Red Wing, Minnesota, the following day without formal extradition.[1] On January 13, 1941, a grand jury was convened in Goodhue County, and at about 2:20 p. m. brought in an indictment charging relator with murder in the second degree arising out of the death of one Martin Wangen. Shortly thereafter, on the same afternoon, relator was arraigned. The court, having determined that relator wished to be represented and that he was without means to employ his own counsel, directed the appointment of an attorney then present in the courtroom. The following colloquy appears in the official transcript of the proceedings:

"THE COURT: The Court will appoint Mr. Clinton H. Bentley to act as your attorney under the Statute. Mr. County Attorney, will you have Mr. Bentley come up at once.

\* \* \* \* \*

"(MR. CLINTON H. BENTLEY appears as attorney on behalf of the Defendant.)

"MR. HOLST: May it please the Court, at this time I move the arraignment of Mr. Arthur Kons.

"THE COURT: Mr. Kons, you may step forward. You have been indicted under the name of Arthur B. Kons, also known as Arthur Kons, also known as Albert B. Miller. What is your true name?

"DEFENDANT: Arthur Kons.

"THE COURT: Mr. Clerk, would you read this indictment?

"(Indictment read by Clerk of Court)

"THE COURT: Is the defendant prepared to plead to this indictment?

"MR. BENTLEY: He is, your Honor.

"THE COURT: Does he plead guilty or not guilty?

"MR. BENTLEY: He pleads guilty, your Honor.

"THE COURT: It may be noted that the defendant pleads that he is

---

[1] Relator does not press the issue concerning the propriety of his removal because that question was not raised at the time of his arraignment. State v. Porter, 274 Minn. 419, 144 N. W. (2d) 260.

guilty of the offense charged in the Indictment. The defendant will be sworn to answer questions.

"THE CLERK: The defendant has already been sworn.

"(Defendant takes the witness stand.)"

Relator then acknowledged among other things conviction for larceny and robbery, arson, a second robbery, and assault of a prison guard, apparently in an escape attempt. At the conclusion of the proceedings, the county attorney moved that relator be sentenced, at which point the court stated: "Do you know of any reason why sentence should not be pronounced upon you, Mr. Kons?" Defendant replied, "No, sir." Thereupon, a life sentence was imposed to which were attached the following impressions of the court: "A strong criminal type. The Court makes no recommendations as to leniency."

At the time of relator's conviction, Mason St. 1927, § 10797 (later Minn. St. 1957, § 640.10) provided that "in cases in which the convict pleads guilty, his detailed account of the facts indicating his guilt" shall be included in the record.[2] We have been cited no authority for the proposition that it is prejudicial error to omit inquiry into the facts of the crime at the time of arraignment. We decline to hold that the oversight is one which requires resentencing. Subject to the defendant's right against self-incrimination, it is good practice for the court to hear from defendant concerning the facts of the offense in order to satisfy the court that the plea of guilty is consistent with the circumstances giving rise to the conviction. In addition, it may bear on the kind of sentence which will be imposed. This view is fortified by American Bar Association, Standards Relating to Pleas of Guilty (tentative draft), § 1.6, which states:

"Notwithstanding the acceptance of a plea of guilty, the court should

---

[2] L. 1961, c. 602, amended the statute with respect to the necessity for a detailed account of the facts and substituted the phrase "testimony concerning his guilt." Thereafter, Minn. St. 640.10 was renumbered as Minn. St. 243.49 and again amended by L. 1965, c. 869, § 15. That amendment deleted the phrase "his testimony concerning his guilt" and provided "in cases in which the person pleads guilty, a transcript of the proceedings relative thereto" shall be included in the record.

not enter a judgment upon such plea without making such inquiry as may satisfy it that there is a factual basis for the plea."

The following reasons for the standard are found in Standards with Commentary, § 1.6, p. 32:

"* * * First and foremost, inquiry ensures that the defendant actually committed a crime at least as serious as the one to which he is willing to plead. Secondly, investigation into the factual basis of guilty pleas acts to increase the visibility of charge reduction practices, a common form of plea agreement. In addition, these inquiries provide a more adequate record of the conviction process; this record minimizes the chances of a defendant successfully challenging his conviction later, *e.g.,* see McGrady v. Cunningham, 296 F. 2d 600 (4th Cir. 1961), and also aids correctional agencies in the performance of their functions. Finally, increased knowledge about the circumstances of the defendant's offense provides the court with a better assessment of defendant's competency, his willingness to plead guilty, and his understanding of the charges against him. NEWMAN ch. 1."

However salutary the rule may be, we find no prejudice in the court's failure to inquire about the facts of the crime. Nothing in the record, either at the initial proceedings or at the habeas corpus hearing, suggests that a disclosure of the circumstances would have prevented the court from accepting a plea of guilty. Indeed, the inferences are all to the contrary. For these reasons, we hold that failure to comply with Minn. St. 640.10 does not require a resentencing.

■ Relator complains of the court's neglecting to comply with Minn. St. 630.29 at the time of arraignment. That statute reads as follows:

"A plea of guilty can in no case be put in except by the defendant himself in open court, unless upon an indictment against a corporation, in which case it may be put in by counsel. At any time before judgment the court may permit it to be withdrawn and a plea of not guilty substituted."

Again, the danger of failing to elicit the plea from defendant himself is obvious, more particularly when the charge is murder and defendant faces a life sentence. Apart from its being a violation of the statute, the pro-

cedure here followed offends sound judicial policy. American Bar Association, Standards Relating to Pleas of Guilty (tentative draft), § 1.1, provides in part:

"* * * A plea of guilty or nolo contendere should be received only from the defendant himself in open court, * * *."

The Commentary, § 1.1(a), notes:

"* * * At common law, an attorney for the defendant could not plead guilty for the defendant, even when the defendant stood by in apparent acquiescence. ORFIELD, CRIMINAL PROCEDURE FROM ARREST TO APPEAL 294 (1947). The Advisory Committee prefers the latter rule because it avoids the difficult problem for appellate courts of determining whether, by his silence or some other conduct, the defendant actually acquiesced to the plea entered by counsel. See cases in Annot., 110 A. L. R. 1300 (1957). As one court observed, 'nothing should be left to implication' in such an important matter. People v. McCrory, 41 Cal. 458 (1871)."

Notwithstanding the court's acceptance of the plea from counsel, relator does not seriously contend that he misunderstood what transpired. On cross-examination at the habeas corpus hearing, the following testimony was elicited from relator:

"Q.   When did you first learn that you had been accused of murder in the second degree?

"A.   When he read it in court there before the grand jury.

"Q.   And your attorney was present?

"A.   Yes.

"Q.   And you heard him make his plea?

"A.   He didn't make any plea.

"Q.   He said that you were guilty, didn't he?

"A.   Well, he said 'We plead guilty, Your Honor.'

"Q.   Yes. And you heard him?

"A.   I was going—going up to the stand and I didn't know what—what was going on there, and I had no way of objecting.

"Q.   Well, I say you heard him?

"A.   I had no way of objecting. He was my attorney.

"Q.   You heard what he said?

"A.   That's right.

"Q.   And you made no objection to the Court that you did not plead guilty?

"A.   I had no chance to object.

"Q.   Well, you didn't, anyway, did you?

"A.   No. It was up to the attorney to object, wasn't it?

"Q.   *And you understood when the Court imposed sentence what it was, didn't you?*

"A.   *Sure I knew what it was.*

"Q.   He said that you were guilty?

"A.   No.

"Q.   And he said that the sentence was as follows, and then read the sentence, didn't he?

"A.   I didn't say it. He said it.

"Q.   And you heard what he said?

"A.   That's right." (Italics supplied.)

At the time of this conviction, relator was 32 years of age and had been convicted of at least four serious felonies. He had spent nearly all of his adult life in prison. He had more than a casual familiarity with criminal processes. We find it difficult to believe he did not understand the nature of the plea which was being entered on his behalf.

The same question was raised in State ex rel. Rajala v. Rigg, 257 Minn. 372, 379, 101 N. W. (2d) 608, 613. We there concluded that Minn. St. 630.29 is directory and not mandatory and its violation does not deprive the court of jurisdiction, provided the defendant is present and in open court when the plea is entered on his behalf.

■ In support of his claim that he had an inadequate opportunity to consult with his attorney and that he was not properly advised of his rights, relator calls attention to the fact that a period of only one hour and a half or two hours elapsed between the time he was indicted and the time he was actually committed to prison. It was his testimony that he consulted with his attorney for only 3 or 4 minutes before the plea was entered,

and that the judge did not leave the bench while this was going on. The transcript does not show what length of time transpired between the time counsel was appointed and the time the plea was entered. It may be inferred, however, that whatever recess had occurred was not an extended one. Unfortunately, neither party saw fit to call defendant's counsel in rebuttal. His testimony would have been helpful to this court in reviewing the facts. State ex rel. Schuler v. Tahash, 278 Minn. 302, 307, 154 N. W. (2d) 200, 205. Relator testified that his attorney advised him of none of his rights and that he did not discuss the facts of the crime with relator. As we previously indicated, the habeas corpus court held that relator's testimony was so conclusively impeached it refused to give weight to any of it, except as it was corroborated. We think the court was justified in reaching this conclusion and that the presumption that relator was adequately advised of his constitutional rights was not overcome.

The instant case is not unlike that with which we dealt in State ex rel. Fruhrman v. Tahash, 275 Minn. 242, 250, 146 N. W. (2d) 174, 180. There we held the trial court was justified in not accepting defendant's assertion that his counsel failed to advise him of his rights during a 25-minute consultation. In affirming an order discharging a writ of habeas corpus, we stressed the fact that defendant did not clearly and unequivocally profess his innocence and that it was a relevant consideration that the defendant had waited 10 years to challenge his conviction. We have also recently reiterated the rule that a "postconviction proceeding is a collateral attack on a judgment which carries a presumption of regularity and which, therefore, cannot be lightly set aside." State ex rel. Gray v. Tahash, 279 Minn. 248, 250, 156 N. W. (2d) 228, 229. There must be a strong showing of incompetence to rebut the presumption that a defendant was properly advised by his attorney. State ex rel. Adams v. Rigg, 252 Minn. 283, 89 N. W. (2d) 898, certiorari denied, 358 U. S. 899, 79 S. Ct. 224, 3 L. ed. (2d) 149. We are not persuaded that relator has sustained his burden of showing his representation was perfunctory and casual as in State ex rel. Dehning v. Rigg, 251 Minn. 120, 86 N. W. (2d) 723, rendering the proceedings a sham and pretense, or a farce or mockery of justice as we stated in State v. Waldron, 273 Minn. 57, 139 N. W. (2d) 785. The findings of the habeas corpus court are entitled to great weight

and will not be set aside on the bald assertion of relator that he was inadequately represented, more especially where there is no claim of innocence. State ex rel. Dillard v. Tahash, 265 Minn. 322, 121 N. W. (2d) 602.

There may be circumstances where even after a delay of 27 years the court will permit a plea of guilty to be withdrawn if defendant has been denied a constitutional right which is prejudicial and casts doubt on his guilt or innocence.[3] With respect to the instant case, however, we hold that the procedural deficiencies do not require a reversal. Defendant was present and heard the plea of guilty entered. His attorney stated he was prepared to plead and relator did not demur. Before sentence was pronounced, he was given an opportunity to speak. He was a mature person, well versed in criminal procedure. While the trial court did not have before it relator's confession, it was introduced and received in the habeas corpus proceedings. Relator admitted the signature attached was his but denied he had affixed it. The confession recites in detail relator's version of two brutal shootings and robberies, one of which resulted in this prosecution for murder and neither of which defendant has in any way denied. We are not persuaded there has been a miscarriage of justice. The order discharging the writ of habeas corpus is therefore affirmed.

Affirmed.

---

[3] Not every denial of a constitutional right is prejudicial. Chapman v. California, 386 U. S. 18, 87 S. Ct. 824, 17 L. ed. (2d) 705, rehearing denied, 386 U. S. 987, 87 S. Ct. 1283, 18 L. ed. (2d) 241.