## STATE v. DENNIS DAROL LINEHAN.

164 N. W. (2d) 616.

January 17, 1969—No. 40331.

*C. Paul Jones,* State Public Defender, and *Ronald L. Haskvitz,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *William B. Randall,* County Attorney, and *Mentor C. Addicks, Jr.,* Assistant County Attorney, for respondent.

SHERAN, JUSTICE.

Review of an order of the district court refusing to vacate a plea of guilty to the crime of kidnapping, the determination being made upon remand of the case by this court in State v. Linehan, 276 Minn. 349, 150 N. W. (2d) 203.

The issue for decision is whether the trial court erred in denying defendant's motion to vacate the plea of guilty in face of his claim that it was tendered only because the state had succeeded in obtaining confessions

from him in violation of rights protected by the State and Federal Constitutions.

The circumstances in which a plea of guilty may be vacated are outlined in Chapman v. State, 282 Minn. 13, 162 N. W. (2d) 698, where our recent cases on the subject are collected.[1] One of the situations is where the plea of guilty was interposed only because of clear and grave misapprehension concerning the admissibility of illegally obtained evidence. We made specific reference in that case to our holding in State ex rel. Drysdale v. Tahash, 278 Minn. 361, 154 N. W. (2d) 691, that in order to have a plea of guilty vacated upon the ground that a confession secured before the plea was made was obtained illegally a party must establish that he was misled as to his constitutional rights with regard to the illegally obtained confession and that his plea of guilty was prompted by the existence of the confession.

The sequence of significant events in this case is as follows:

June 9, 1965—Barbara Jean Iversen, a 14-year-old girl, disappeared under mysterious circumstances from the home where she was babysitting.

July 16, 1965—Defendant, Dennis Darol Linehan, was arrested and confined in the Anoka County jail, being charged with the offense of burglary and two incidents of indecent assault. These charges did not involve Barbara Jean Iversen.

July 19, 1965—James Neilson, an attorney in Anoka, Minnesota, was appointed to represent defendant on account of the charges pending in Anoka County.

July 26, 1965—Marianne Linehan, wife of defendant, gave representatives of the Ramsey County Sheriff's office a statement which led to the discovery of the corpse of Barbara Jean Iversen. The investigation then came to focus upon Dennis Darol Linehan.

July 28–30, 1965—Two written confessions were obtained from defendant, one executed by him at the Anoka County jail and the other at the Ramsey County jail. These confessions are the crux of the matter now before us.

---

[1] See, also, State ex rel. Kons v. Tahash, 281 Minn. 467, 161 N. W. (2d) 826; State v. Williams, 279 Minn. 152, 155 N. W. (2d) 739.

August 6, 1965—An indictment was returned by the grand jury of Ramsey County charging defendant with murder in the first degree; [2] murder in the third degree; [3] and kidnapping. [4]

August 9, 1965—Robert Tolaas and Roger R. Lenzmeier (then public defender and assistant public defender of Ramsey County) were appointed to represent defendant in the proceedings based on the indictment.

August 13, 1965—Defendant appeared for arraignment [5] in the district court. Arraignment was deferred at the request of his appointed counsel, and a request for a psychiatric examination to determine his competency to stand trial was granted. [6]

September 10, 1965—Defendant again appeared for arraignment. He was found competent to stand trial on the basis of the psychiatric report, which by then had been received. The motion of his counsel to adjourn the arraignment was granted.

September 17, 1965—Defendant, arraigned on the indictment, tendered a plea of guilty to murder in the third degree on the theory that acceptance of this plea would bar prosecution on the other counts appearing in the indictment. The plea was rejected. [7]

---

[2] Minn. St. 609.185.

[3] Minn. St. 609.195.

[4] Minn. St. 609.25 provides in part: "Subdivision 1. Whoever, for any of the following purposes, confines or removes from one place to another, any person without his consent or, if he is under the age of 16 years, without the consent of his parents or other legal custodian, is guilty of kidnapping and may be sentenced as provided in subdivision 2:

\* \* \* \* \*

"(2) To facilitate commission of any felony \* \* \*; \* \* \*

\* \* \* \* \*

"Subd. 2. Whoever violates subdivision 1 may be sentenced as follows:

"(1) If the victim is released in a safe place without great bodily harm \* \* \*; or

"(2) Otherwise to imprisonment for not more than 40 years or to payment of a fine of not more than $40,000, or both."

[5] Minn. St. 630.11.

[6] Minn. St. 631.18.

[7] "\* \* \* [T]he power of the trial court to accept or reject the plea as tendered was discretionary.

September 17, 1965—The court entered an order setting November 8, 1965, as the date for trial of the kidnapping charge embraced in the indictment.[8]

October 1, 1965—Upon authorization by the district court,[9] the indictment returned by the grand jury on August 6, 1965, was dismissed and an information charging defendant with the charge of kidnapping was filed. Defendant pleaded guilty to the kidnapping charge. He was thereafter sentenced for this crime according to law.

After the indictment was dismissed and the information filed, the attorney for defendant requested the county attorney to make a statement with respect to the possibility of other charges being filed against defendant based on the disappearance and death of Barbara Jean Iversen. Mr. William B. Randall, the county attorney, stated:

"* * * [M]y intent is that the information which the Court has allowed us to substitute *does include all crimes* involving Dennis Darol Linehan as it concerns Barbara Jean Iversen * * * starting with the events on that particular night and subsequently." (Italics supplied.)

The attorney for the defendant then said, "Based on the statement of the County Attorney, the defendant is ready for arraignment, Your Honor." The information was read and defendant interposed his plea of guilty.

Before sentence was imposed, defendant was interrogated by the county attorney and his own counsel.[10] From the record it appears that in giving his personal background he responded to the questioning without difficulty. He acknowledged that he had conferred with his court-appointed

---

"* * * There is nothing in the grand jury's action showing an intent to vary the rule that the defendant has no absolute right to plead guilty to anything less than the entire indictment." State v. Linehan, 276 Minn. 349, 353, 150 N. W. (2d) 203, 207.

[8] Minn. St. 609.035.

[9] Minn. St. 631.21 provides in part: "The court may, either of its own motion or upon the application of the prosecuting officer, and in furtherance of justice, order any criminal action, whether prosecuted upon indictment, information, or complaint, to be dismissed * * *."

[10] See, State ex rel. Kons v. Tahash, 281 Minn. 467, 470, 161 N. W. (2d) 826, 829, and particularly footnote 2.

counsel on many occasions, discussing with them the offenses of first-degree murder, third-degree murder, and kidnapping (of which he was then charged) and the penalty for each. He stated that he understood the nature of the crime of kidnapping to which he had entered his plea of guilty and that no threats or promises had been made in an effort to secure his plea.

Defendant then informed the court that a little before or after midnight, June 10, 1965, he induced Barbara Jean Iversen, 14 years of age, to leave the house where she was babysitting and go with him to his car parked nearby. He drove the car to a point about a mile away. He was then questioned:

"Q. And what happened at that point?

"A. Well, we were fighting. She was screaming and hitting and clawing at me, and I stopped the car to try to calm her down and she just got all the worse.

"Q. Then what occurred?

"A. I tried to calm her down, and she was screaming, and it was quiet out that night, it seemed like, and I got scared and put my hand over her mouth, and that didn't help, and I grabbed her by the throat, and as soon as I grabbed her she just went limp, I thought she fainted or passed out but she never came to, and I tried to give her artificial respiration but it didn't do any good.

"Q. After giving her artificial respiration and she didn't come to, did you determine as a matter of fact that she was dead?

"A. Yes."

An extensive hearing has been held in the district court upon defendant's motion to vacate the plea of guilty, with the testimony directed principally to the question of whether the confessions of July 28–30 were secured by illegal means. The Honorable John W. Graff, who heard the evidence, has found beyond a reasonable doubt these facts:

A. The statements taken from defendant on July 28, 1965, and July 30, 1965, were not illegally obtained in violation of rights guaranteed by the Fifth and Sixth Amendments to the United States Constitution.

B. The statements taken from defendant on July 28, 1965, and

July 30, 1965, were voluntary and the defendant was not denied his constitutional rights by the affirmative conduct of any person employed by the County of Ramsey, Minnesota.

C. The statements taken from defendant on July 28, 1965, and July 30, 1965, were not elicited by psychological or physical coercion or by any duress or by any threats or promises or by the exertion of any improper influence.

These findings are prefaced by a detailed analysis of the applicable rules of law,[11] reflecting a proper concern on the part of the trial judge for adherence to correct procedure in securing confessions. We do not undertake a review of the evidence in support of these findings (although we are satisfied that the determination of the trial court that the confessions were voluntary in fact has support in the evidence) because our decision to affirm the order denying the motion to vacate the plea is based primarily upon the ground that the record establishes clearly the following findings on the part of the trial judge, which are sufficient to sustain his decision:

D. The defendant's plea of guilty to the charge of kidnapping was not entered because of a misapprehension that the confessions could be used against him if he stood trial.

E. The defendant was properly advised and was not misled as to his constitutional rights with regard to the statements of July 28, 1965, and July 30, 1965.

F. The defendant's plea of guilty was caused and prompted by many factors, one of which was the existence of the two statements.

At the time the plea of guilty was interposed, defendant was represented by competent counsel with experience in the field of criminal law. One of these attorneys, Mr. Lenzmeier, testified[12] that he and Mr. Tolaas, while working together during the period from March 15, 1964, until

---

[11] The plea of guilty was accepted before the effective date of Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694, filed June 13, 1966. See, Chapman v. State, 282 Minn. 13, 162 N. W. (2d) 698.

[12] In this connection, note the comment in State ex rel. Kons v. Tahash, 281 Minn. 467, 473, 161 N. W. (2d) 826, 831.

December 31, 1966, had represented approximately 700 persons accused of felonies. Lenzmeier had conferred with defendant approximately 10 times during the period of their representation of him. They found him to be "most cooperative" and "very interested in the pertinent law," which he appeared to grasp. They questioned him specifically with respect to the circumstances under which the confessions were obtained and before defendant interposed the plea of guilty they secured from him a statement in writing and under oath confirming this to be the fact. This affidavit reads in part:

"That on September 14, 1965, counsel again discussed said charges with affiant and furthermore discussed affiant's right, either before or after arraignment, to bring a motion to suppress the written statements given by affiant to the investigative authorities prior to the time of the indictment and before affiant was represented by counsel herein, on the grounds that affiant was not properly represented and advised of his constitutional rights and for other related legal rights, to refrain from giving a statement as set forth in recent federal and other state decisions; that affiant fully understood the purpose of said motion to suppress said statements and has given ample consideration to proceeding in that manner.[13]

"That on September 15, 1965, affiant advised attorney Robert P. Tolaas that it is his desire not to bring such a motion but rather to proceed with disposition of the matter without the benefit of the court's decision on such a motion; that affiant is fully aware of the importance of the contents of said aforementioned statements in the event trial is necessary on any or all of the counts set forth in the indictment herein and affiant is further aware that without the benefit of said statements it might be extremely difficult, if not impossible, to convict affiant."

The psychiatric report secured by the court at the request of defendant's counsel following the hearing of August 13, 1965, confirms the fact that defendant was competent to stand trial and able to cooperate with his counsel in his defense. He does not now contend otherwise. The

---

[13] The procedure to be followed where the admissibility of a confession is contested is set out in State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. (2d) 3.

efforts made by the attorneys appointed to represent defendant before his plea of guilty was interposed reflect competence on their part and no attempt has been or is now made by defendant to disparage their capacity.

The situation is one then, in summary, where a plea of guilty was tendered by defendant represented by competent counsel who (after adequate consultation with him at a time when he was able to understand and evaluate their recommendations and advice) told him specifically that (a) he had a right to contest the admissibility of the confessions; (b) if suppressed, the confessions could not be used against him; and (c) without the confessions, the state would have difficulty getting a conviction. Under these circumstances, the defendant has not interposed his plea of guilty under clear and grave misapprehension concerning the admissibility of the evidence within the meaning of our decision in Chapman v. State, *supra*.

In arriving at our decision, we have not overlooked testimony on the part of defendant to the effect that he signed the confessions only because he was promised that should he do so, he would not be charged with murder in the first degree. This claim is of great significance because Mr. Lenzmeier, one of the attorneys representing defendant at the time the plea was interposed, testified that he had advised defendant that the possibility of suppressing the confessions under the law as it then existed was remote—an opinion which he would not have given had he been informed at the time that such a promise had been made. But the trial judge in his memorandum, dealing specifically with this contention, has found that no such promise was ever made. The evidence disclosed by the record supports, if it does not compel, this finding.

We are satisfied that the trial court acted properly in receiving defendant's plea of guilty to the charge of kidnapping; that the plea of guilty was interposed with knowledge on the part of the defendant of his constitutional rights; and that the conviction based on the plea does not constitute an injustice,[14] manifest or otherwise.

Affirmed.

---

[14] The American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (tentative draft), § 2.1(a),

---

provides that the court shall allow a defendant to withdraw his plea of guilty whenever the defendant proves "that withdrawal is necessary to correct a manifest injustice." See, Chapman v. State, *supra.*