STATE of Minnesota, Respondent,

v.

Thomas J. BOUWMAN, Appellant.

No. C8–83–651.

Supreme Court of Minnesota.

Aug. 17, 1984.

C. Paul Jones Public Defender, Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Hennepin County Atty., Minneapolis, for respondent.

AMDAHL, Chief Justice.

Thomas Bouwman was convicted of two counts of second-degree murder in the brutal stabbing deaths of Bouwman's parents-in-law, Marvin and Pearl Isaacson. A Hennepin County District Court found Bouwman guilty on both counts of second-degree murder at the conclusion of a trial to the court on January 26, 1983. Bouwman raises the following three issues on appeal:

1. Whether Bouwman proved by a preponderance of the evidence that he was so mentally ill that he did not know the nature of his acts or was unable to distinguish right from wrong.

2. Whether the district court's comments at the close of the state's case constituted an acquittal.

3. Whether Bouwman was denied due process because of his absence from the in-chambers discussion of the motion for acquittal.

A brief recitation of the facts is necessary prior to addressing the substantive issues.

In late March 1981, Bouwman, with his employer's urging, admitted himself to the psychiatric unit at St. Mary's Hospital in Minneapolis. He suffered severe depression; for several months previous to his admission he had been attempting to locate or communicate with his estranged wife, Midge. His initial admission diagnosis was psychotic depression. Bouwman's frustration with the state of his marriage had led to his depression.

For almost 5 weeks, he was treated with the antipsychotic drug Thorazene. In mid-April, a Minnesota Multiphasic Personality Inventory (MMPI) test indicated that Bouwman's psychosis had been "resolved." Whether the psychosis was eliminated by drug treatment or counseling is not clear.

In late April, his treatment with Thorazene was discontinued. Notwithstanding the absence of psychotic symptoms in his recent MMPI, Bouwman's treating psychiatrist, Dr. Joseph Gendron, testified that Thorazene did not seem to be alleviating his depression. Consequently, Bouwman was placed on Ascendin, an antidepressant drug, to help "get a better energy perspective in balance." In addition, Bouwman was transferred from the psychiatric ward to the chemical dependency unit. Bouwman had a long history of alcohol and drug abuse. Dr. Gendron testified that Bouwman had benefited as much as possible in the psychiatric ward and that the chemical dependency unit was an alternative avenue of treatment.

At approximately 9 a.m. on May 1, 1981, Bouwman left the chemical dependency unit at St. Mary's feeling hopeless and intending to commit suicide by jumping off the Washington Avenue bridge. After wandering around for a period of time, he decided that he should commit suicide in a way that would attract Midge's attention. He called a cab to take him to a Target store where he could cash a check to buy some alcohol; he also bought a knife which he planned to plunge into his heart. At some point between his wanderings and his trip to Target, Bouwman decided to go to the Isaacson home to kill himself. Bouwman's relationship with his parents-in-law was strained because of his continuous phone calls inquiring about Midge's whereabouts.

After consuming 1 pint of alcohol, and starting a second, Bouwman arrived at the Isaacson home at 4428 Lyndale. He sat on the front porch for a while. Afraid that a neighbor would see him and prevent his suicide attempt, he walked to the back steps and continued to drink a second pint of alcohol. His obsession with his wife led Bouwman to the decision that he should attempt to get in touch with her once more. He saw an unlocked basement window and decided to enter the Isaacson home. Prior to entering through the window, he cut the phone line to prevent the Isaacsons from calling the police or St. Mary's.

Midge's dog Satin was in the basement of the Isaacson home and he brought the dog upstairs with him. Bouwman claims that he did not intend to harm the Isaacsons when he entered their home. He encountered Marvin Isaacson first. He demanded that Isaacson give him straight answers to his questions about Midge and also admitted that he knew he didn't belong in the Isaacson home but had to "get to the bottom of [it] all." Bouwman and Marvin Isaacson went upstairs and encountered an angry Pearl Isaacson. Bouwman then cut a second phone line to prevent her from calling the police.

Eventually Bouwman and the Isaacsons went downstairs to the kitchen to drink coffee and talk. After an emotional conversation and the realization that self-pity was not productive, he demanded answers to his questions. He placed the knife at the dog's throat, threatening to kill the dog if his questions were not answered. Marvin Isaacson responded to the threat by throwing a cup of scalding hot coffee in Bouwman's face. Bouwman went into a rage, stabbing and lashing out and does not remember much more about the incident.

Before leaving the Isaacson home, Bouwman attempted to sexually assault Pearl Isaacson but managed only to place his finger in her vagina. He then rummaged about the house looking for clues of Midge's whereabouts.

Shortly afterwards, he appeared at Midge's sister, Holly Kivin's doorstep with Satin, demanding Midge's phone number. Holly and her ex-husband Larry called the police informing them that Bouwman should be in St. Mary's. Lieutenant Keith Davidson arrived 5 minutes later; Officers Hackenmueller and Polus came to the scene minutes after Davidson arrived. After the dog was wrested away from Bouwman's grasp, Bouwman was placed in Davidson's squad car and he informed Davidson that "You have to come with me. I know where two people are dead." Davidson asked Bouwman why there were

two dead people and he responded "They lied to me; they lied to me."

Davidson informed Hackenmueller and Polus of his conversation with Bouwman and both squads proceeded to 4428 Lyndale where the bodies of Marvin and Pearl Isaacson were discovered. The Isaacsons had been stabbed eight to ten times each and died of massive internal bleeding.

Police investigators were called to the scene and Bouwman was given his *Miranda* rights and placed under arrest for murder. Hackenmueller and Polus transported Bouwman to Hennepin County Medical Center for treatment of Bouwman's cut hand.

■ 1. The district court found Bouwman guilty of second-degree murder and ruled that he was not excused by reason of insanity. In insanity defense cases, we have held that "[s]ubstantial deference is accorded the jury's evaluation of the testimony on mental illness, and we have often said that the jury is the sole judge of the believability and weight of the testimony." *State v. Linder*, 304 N.W.2d 902, 907 (Minn.1981), *citing State v. Larson*, 281 N.W.2d 481, 487 (Minn.1979). *See also State v. Hoskins*, 292 Minn. 111, 137–38, 193 N.W.2d 802, 819 (1972). Bouwman waived his right to a jury trial and consequently the district court was also the factfinder. *See* Minn.R.Crim.P. 26.01, subd. 1(2) (1983). "It is well established that the findings of the trial court, after waiver of a jury trial by a defendant, are entitled to the same weight as a jury verdict." *State v. Crosby*, 277 Minn. 22, 24, 151 N.W.2d 297, 299 (1967) (citations omitted). *See State v. Cox*, 278 N.W.2d 62, 65 (Minn.1979). *Cf. United States v. Niver*, 689 F.2d 520, 529 (5th Cir.1982) (test is whether evidence is sufficient to justify trial judge's conclusion that defendant was guilty beyond a reasonable doubt (citations omitted)). Hence, we must review the evidence concerning whether Bouwman was insane under Minn. Stat. § 611.026 (1982) in the light most favorable to the verdict. *State v. Dodis*, 314 N.W.2d 233, 237 (Minn.1982). *See State v. McCullum*, 289 N.W.2d 89, 91 (Minn.1979); *State v. Oevering*, 268 N.W.2d 68, 71 (Minn.1978).

■ Minn.Stat. § 611.026 (1982) codifies the M'Naughton Rule in Minnesota:

No person shall be tried, sentenced, or punished for any crime while mentally ill or mentally deficient so as to be incapable of understanding the proceedings or making a defense; but he shall not be excused from criminal liability except upon proof that at the time of committing the alleged criminal act he was laboring under such a defect of reason, from one of these causes, as not to know the nature of his act or that it was wrong.

The law presumes sanity, *State v. Larson*, 281 N.W.2d 481, 483, 486 (Minn.1979), and any defendant asserting the defense bears the burden of proving insanity by a preponderance of the evidence. *State v. Linder*, 304 N.W.2d at 907; *State v. Bott*, 310 Minn. 331, 335, 246 N.W.2d 48, 52 (1976).

Two psychiatrists, Dr. Carl Schwartz and Dr. Charles McCafferty, testified that Bouwman "was laboring under such a defect of reason * * * as not to know the nature of his act, or that it was wrong." Minn.Stat. § 611.026 (1982). Dr. Joseph Gendron, Bouwman's treating psychiatrist, testified that he was not psychotic under the guidelines of the Diagnostic and Statistical Manual of Mental Disorders [1] and that he "did know right from wrong," could "exercise volition and choice" and had the "capacity to act purposefully." In addition, Gendron testified that he saw Bouwman shortly before he left the hospital and that he was not psychotic at that time. The state also introduced, as evidence, a report by Dr. Malmquist. Malmquist agreed with Gendron's appraisal of Bouwman—that he was not psychotic and that his chief problem was his chemical dependency and paranoid personality. In addition,

---

1. Frequently referred to as DSM–III, this manual is a *recognized compendium of psychiatric disorders and their accompanying symptoms,* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, (3rd ed. 1980).

Malmquist did not find him insane under the *M'Naughton* standard.

■ Although defense counsel attempted to impeach Gendron during cross-examination with respect to his opinion of Bouwman's capacity to form specific intent, the trial court evidently found the opinions of Gendron and Malmquist more persuasive. The trial court's conclusion that appellant was not M'Naughton insane is supported by substantial evidence and in light of the deference accorded a finding of fact on this issue, *see Linder*, 304 N.W.2d at 907, the trial court is affirmed.

2. The state presented its entire case relating to the initial phase of a *Hoffman* unitary trial[2] on January 11, 1982. On January 25, 1982, the trial resumed and the attorneys conferenced with the district court judge in chambers before the defense presented its case. During this conference the following exchange took place:

> THE COURT: It has occurred to me as I have been reviewing the evidence in this case over the last couple of days that if the case were submitted to me with no further evidence I would not find guilt beyond a reasonable doubt of 2nd degree Murder on either case. The most I could find would be 1st degree Manslaughter.
>
> My moral question has been whether I could properly raise this to counsel, A, or, B., whether I had a duty to raise it. I decided I would have no duty, but I would not be out of line raising it because this is a Court case.
>
> I will tell you right now, there is no way, unless evidence comes in through testimony of the defendant or by admission through the psychiatrists, through testimony of a psychiatrist, that he can be convicted of Murder, in my judgment.

Defense counsel informed the court that he planned to move for a judgment of acquittal pursuant to Minn.R.Crim.P. 26.03, subd. 17 (1983). The court then suggested that appellant's counsel consider pleading to manslaughter one pursuant to Rule 15.07 of the Rules of Criminal Procedure.

Appellant's counsel responded "[i]f you were going to rule that at this point the State has proved no more than Murder in the 2nd Degree, I was going to put Tom [appellant] on. If you ruled and agreed with me that he hadn't—the State hasn't proved anything greater than Manslaughter in the 1st degree, I was simply going to rest, present no evidence." The court stated that it could draw equal inferences of 2nd degree murder or 1st degree manslaughter and that under the circumstantial evidence rule then the inference most favorable to the accused must be drawn. Defense counsel then formally moved for acquittal on first-, second-, or third-degree murder.

The court's response to this motion was as follows:

> THE COURT: It's the Court's opinion that Rule 26.03, Subdivision 17, the first paragraph thereof, does not apply to lesser included offenses in that the motion would be appropriate if the evidence were insufficient to sustain a conviction of the offense or a lesser included offense. Now, admittedly that interpretation reads additional words into the Rule. The draftors' comments are not enlightening on this subject.
>
> The Court before granting such a motion would have to be satisfied that it would be appropriate in the face of the State's continuing ability to prove a prima facie case of a lesser included offense.
>
> Therefore, the motion is denied without prejudice, the Court being aware that the State at this point in the Court's judgment has not proved a prima facie case of Murder in the 1st degree, has not proved a prima facie case of Murder in the 2nd degree, or Murder in the 3rd degree, but has proved a prima facie case of Manslaughter in the 1st degree as to

---

**2.** *See State v. Hoffman*, 328 N.W.2d 709, 716–17 (Minn.1982). Rule 20.02, subd. 6(2) of the Minnesota Rules of Criminal Procedure (effective August 1, 1983) now, however, mandates a bi-furcated trial when a defendant relies on a defense of not guilty and of mental illness or mental deficiency.

each victim. However, procedurally, the motion is denied without prejudice.

Two hours later, the district court qualified its earlier ruling, stating:

THE COURT: In connection with the ruling which I made on the motion for judgment of acquittal, I have considered the motion in the light of the Rules of Criminal Procedure, as I understand them. I read Rule 26.03, Subdivision 17(1) to include lesser included offenses in the requirement that the evidence not be sufficient to sustain a conviction.

Therefore, the motion for judgment of acquittal is granted as to 1st degree Murder, denied as to 2nd degree Murder, and 1st degree Manslaughter.

I am satisfied that the evidence at this stage produced by the State would contain [sic] a conviction for either 2nd degree Murder, or 1st degree Manslaughter. Although.. the jury, were there a jury, would be instructed that as to the circumstantial evidence upon which this case rests, it would be required to adopt the inference most favorable to the defendant if the evidence equally supports two or more inferences.

Bouwman argues that the district court's initial ruling that the state could not prove murder constituted an acquittal for purposes of Rule 26.03, subd. 17(1), (2) of the Rules of Criminal Procedure and the Double Jeopardy Clause of the United States Constitution.[3]

Minnesota Rules of Criminal Procedure 26.03, subd. 17(1) (1983), provides in pertinent part as follows:

After the evidence on either side is closed, the court on motion of a defendant or on its own motion *shall* order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction * * *.

(Emphasis added.) Part 2 of subdivision 17 prohibits the trial court from reserving its decision on the motion, if the motion is made at the close of the prosecutor's case. Minn.R.Crim.P. 26.03, subd. 17(2).

Rule 26.03, subd. 17(1), is nearly identical to Federal Rule of Criminal Procedure 29(a) and federal courts have construed Rule 29(a)'s requirements as mandatory.[4] *See Burks v. United States*, 437 U.S. 1, 11 n. 5, 98 S.Ct. 2141, 2147 n. 5, 57 L.Ed.2d 1 (1978); *United States v. Brown*, 456 F.2d 293, 294 (2nd Cir.), *cert. denied*, 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972). The mandatory nature of Rule 29(a) reflects the principle that "the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense." *United States v. Hinderman*, 625 F.2d 994, 996 (10th Cir. 1980), *quoting Cephus v. United States*, 324 F.2d 893, 895 (D.C.Cir.1963). Consequently, if the district court's initial gratuitous comments are construed as a determination or ruling that the state had not

---

**3.** "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb;". U.S. Const. amend V. In *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the United States Supreme Court held that the prohibition against double jeopardy applied to the states.

The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Benton v. Maryland,* 395 U.S. at 795–96, 89 S.Ct. at 2062–63, *quoting Green v. United States,* 355

U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957).

Bouwman argues that if the trial court's comments are construed as an acquittal, then further proceedings violated the double jeopardy clause.

**4.** The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offense charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.
Fed.R.Crim.P. 29(a).

proved the prima facie elements of murder one, two, or three, then under the federal interpretation of Rule 29(a) acquittal of appellant was mandatory. In addition, if the court's "without prejudice" language is construed as a reservation of his ruling on the motion, then Rule 26.03, subd. 17(1), has not been complied with and the court's action constitutes acquittal. *See United States v. Conway,* 632 F.2d 641, 643 (5th Cir.1980).[5] Failure to rule on the motion is not considered prejudicial if the prosecution's case is sufficient to go to the jury. *See id.; see also United States v. Dreitzler,* 577 F.2d 539, 551–52 (9th Cir.1978).

■ The attachment of jeopardy in a court trial occurs upon the swearing of the first witness. *State v. Abraham,* 335 N.W.2d 745, 748 (Minn.1983), *citing Christ v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). Subsequent proceedings resulting in conviction after a trial court's ruling on the question of defendant's factual innocence violate the double jeopardy clause. *See United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977). Thus, it is necessary to determine the nature of the district court's comments and to determine their double jeopardy consequences, if any.

■ "[I]n determining whether a ruling by the trial court constitutes a judgment of acquittal, the trial court's characterization of its own action is not controlling." *State v. Abraham,* 335 N.W.2d 745, 748 (Minn. 1983). *Accord United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977) ("we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged"). In this case, the district court made a formal ruling on the motion when he granted it with respect to first-degree murder. The district court's preceding comments, although gratuitous and impolitic, appear to be a verbalization of his thought process as he weighed the evidence—they have no binding legal effect.

In *United States v. Miles,* 401 F.2d 65 (7th Cir.1968), the Seventh Circuit reviewed similar comments made by the trial court:

The Court: I still have problems with whether or not the government has proved an aider and abettor case. This is quite another matter, but I don't have the problems on the basis of her testimony. * * *

Mr. Murray: I would say, look, the supervisor is coming, let's get back to work because whether he is a hard worker or not, I don't want to see him get fired. I mean the evidence in this case is susceptible to a multitude of interpretations.

The Court: Mr. Murray, it is certainly susceptible of two interpretations, one of innocence and one of guilt, but not equally, not close.

Mr. Murray: It doesn't have to be.

The Court: It has to be sufficiently susceptible of innocence so that you cannot find the defendant guilty beyond a reasonable doubt.

401 F.2d at 67. On appeal the defendant contended that the court expressed reasonable doubt and therefore should have entered a judgment of acquittal. The Seventh Circuit upheld the conviction:

The court as the trier of fact, in this case, must use its experience with people and events, weighing the probabilities presented by the evidence. Thus, assuming that in reaching its decision the court has "problems" with the evidence, its judgment reflects a weighing of all the evidence. If, by its judgment, the court is convinced beyond a reasonable doubt, we can require no more. *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127 [138], 99 L.Ed. 150 (1954). More-

5. The reservation to a defendant of the right to offer testimony after the denial of a motion for acquittal made at the close of the Government's case would be a futile thing if the court could reserve its ruling and force the defend-ant to an election between resting and being deprived of the benefit of the motion. *Jackson v. United States,* 250 F.2d 897, 901 (5th Cir.1958).

over, it is not the province of the Court of Appeals to retry the case, weigh the evidence or determine the credibility of witnesses. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457 [469], 86 L.Ed. 680 (1942).

*Id.*

In the instant case, as in *Miles*, the district court's formal ruling on the motion occurred when it granted the Rule 26.03, subd. 17(1), motion for first-degree murder and denied the motion for all lesser included offenses. The subsequent proceedings did not violate the double jeopardy clause.

3. Bouwman alleges that he was denied his sixth amendment right to a fair trial as a result of his absence from the in-chambers conference concerning the acquittal motion. Bouwman's attorney was present during these discussions but a defendant has a right to be personally present at every critical stage of his trial.[6] *State v. Grey*, 256 N.W.2d 74, 76 (Minn. 1977). *See Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970). Notwithstanding the generally broad interpretation accorded the right-to-be-present rule, we hold Bouwman's absence from the in-chambers conversation to be harmless error.

Traditionally, courts have held the defendant's absence from critical stages of his trial to merit automatic reversal. *See, e.g., Shaw v. State*, 282 A.2d 608, (Del. 1971); *Deans v. State*, 180 So.2d 178, 180 (Fla.App.1965); *People v. Medcoff*, 344 Mich. 108, 117, 73 N.W.2d 537, 543–44, (1955). *See also Lewis v. United States*, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892); *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884). More specifically, defendants "have the right to be personally present at every stage of the trial where their substantial rights may be affected by the proceedings and where their presence relates to the fullness of their opportunity to defend against the charge." *Medcoff*, 344 Mich. at 115, 73 N.W.2d at 542. Under this rule injury was presumed. *Id.* at 117–18, 73 N.W.2d at 543. The traditional rule, however, has undergone considerable evolution since the United States Supreme Court recognized that even violations of constitutional rights may amount to harmless error when all of the facts and circumstances of a particular case are considered. *See Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). *Accord People v. Hayes*, 126 Mich.App. 721, 337 N.W.2d 905, 909 (1983); *State v. Howard*, 324 N.W.2d 216, 222 (Minn.1982). *Cf. State ex rel. Kons v. Tahash*, 281 Minn. 467, 475 n. 3, 161 N.W.2d 826, 832 n. 3, *cert. denied*, 394 U.S. 961, 89 S.Ct. 1304, 22 L.Ed.2d 562 (1969) (not every denial of constitutional right is prejudicial). Consequently, we must determine whether Bouwman's absence from the in-chambers conference was harmless error.

Under the harmless error rule we "must be able to declare a belief that it [the alleged error] was harmless beyond a reasonable doubt."[7] *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828. The alleged error is not considered in isolation. *State v. Howard*, 324 N.W.2d 216, 222 (Minn.1982). *See Harryman v. Estelle*, 616 F.2d 870, 876 (5th Cir.1980). In the instant case, the evidence of Bouwman's guilt is overwhelming and we are satisfied that his absence from the in-chambers conference did not prejudice his case. Further support for this holding is provided by the numerous cases that provide that the right of the defendant to be present does not extend to

---

6. This right evolved out of the common law right of an accused to a jury trial. *See People v. Medcoff*, 344 Mich. 108, 73 N.W.2d 537 (1955). *See generally*, 3 C. Torcia, Wharton's Criminal Procedure §§ 479–84. (12th ed. 1975). In most courts, the right to be present is mandated by the rules of criminal procedure. *See* Rule 43, Fed.R.Crim.P.; Rule 26.03, subd. 1, Minn.R. Crim.P.

7. The harmless error rule is also codified at Minn.R.Crim.P. 31.01 which provides as follows:

> Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

Rule 31.01 is not at issue in this case though because Bouwman alleges that a substantial right of constitutional dimensions was affected.

in-chambers arguments on questions of law. *See e.g., United States v. Provenzano,* 620 F.2d 985 (3rd Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); *People v. Jackson,* 28 Cal.3d 264, 168 Cal.Rptr. 603, 618 P.2d 149 (1980), *cert. denied, sub nom. Jackson v. California,* 450 U.S. 1035, 101 S.Ct. 1750, 68 L.Ed.2d 232 (1981); *Dobbs v. State,* 245 Ga. 208, 264 S.E.2d 18, *cert. denied, sub nom. Dobbs v. Georgia,* 446 U.S. 913, 100 S.Ct. 1845, 64 L.Ed.2d 267 (1980).

Bouwman also urges us to reconsider our decision in *State v. Bouwman,* 328 N.W.2d 703 (Minn.1982) (hereinafter cited as *Bouwman I*).[8] In *Bouwman I,* we rejected the doctrine of diminished responsibility by precluding the introduction of psychiatric testimony relating to a defendant's ability to formulate specific intent. Together with *State v. Hoffman,* 328 N.W.2d 709 (Minn.1982), *Bouwman I* prescribes the type of evidence admissible concerning *mens rea* and the order in which this evidence must be presented.

 *Bouwman I* does not impinge upon a defendant's right to introduce evidence concerning voluntary intoxication under Minn.Stat. § 609.075 (1982)[9] but simply recognizes that under Minnesota law a defendant is either sane or insane and that psychiatric evidence is admissible only for purposes of establishing insanity under Minn.Stat. § 611.026 (1982). Psychiatric evidence is not admissible under *Bouwman I* to prove a reduced ability to formulate specific intent that is something less than insanity, *i.e.,* there is no diminished responsibility type of insanity. Minnesota criminal law does not recognize gradations

along a continuum of sanity that lessen a defendant's culpability.

Affirmed.

---

8. In *State v. Bouwman,* 328 N.W.2d 703 (Minn. 1982), we addressed an evidentiary issue certified to this court prior to the trial that gave rise to the present appeal. The question certified to this court was as follows:

> May the court admit, at the trial of a defendant charged with murder in the first degree, expert psychiatric opinion testimony (not offered to establish a defense under Minn.Stat. § 611.026) that the defendant, at the time of

the alleged crime, lacked the mental capacity to premeditate the killings or to form the specific intent to kill?

328 N.W.2d at 704–05. We answered the question in the negative. *Id.* at 705.

9. The defense of voluntary intoxication is to be tried in part I of the bifurcated trial mandated by Rule 20.02, subd. 6(2), Minn.R.Crim.P. *See supra,* note 2.