**Maurice HUNLEY, Petitioner–Appellee,**

**v.**

**Salvador GODINEZ, Warden, Stateville Correctional Center, Illinois Department of Corrections, and Roland W. Burris, Attorney General of Illinois, Respondents–Appellants.**

**No. 92–1784.**

United States Court of Appeals, Seventh Circuit.

Argued July 8, 1992.

Decided Sept. 11, 1992.

Robert L. Graham (argued), Bonnie B. Koch, Jenner & Block, Robert D. Nachman, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for petitioner-appellee.

Steven J. Zick (argued), Office of the Atty. Gen., Criminal Appeals Div., Chicago, Ill., for respondents-appellants.

Before CUMMINGS, MANION and KANNE, Circuit Judges.

PER CURIAM.

Maurice Hunley petitioned the district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that he was denied a fair state court trial because of juror bias and prosecutorial misconduct. The district court granted the writ. 784 F.Supp. 522 We affirm.

## I. Background

Lisa Tyson was fatally stabbed in her apartment on November 18, 1983. The Chicago Police Department's subsequent investigation of the murder revealed that there were no signs of forced entry into Tyson's apartment. Because the only way to enter Tyson's building and apartment was with a key, the police concluded that the intruder must have used one to enter the apartment. The Tyson murder remained unsolved for some time. Eventually, the police arrested Hunley for the murder. The police suspected Hunley because he was employed at a nearby hardware store, he had done lock work on Tyson's building, and he had recently been arrested for the burglary of a nearby videostore, for which he had also done lock work.

The State of Illinois charged Hunley with residential burglary and the murder of Lisa Tyson. Hunley's first trial, which lasted one week, ended in a mistrial because the jury, which was divided 7 to 5 in favor of acquittal, could not reach a verdict. Hunley's second trial lasted five days. The jury began deliberating immediately following closing arguments. By 10:00 p.m., the jury had still not reached a verdict. At that point, the jury was divided 8 to 4 or 7 to 5 in favor of conviction.[1] The foreman informed the court that the jury would not be able to reach a verdict in the next hour. So, the trial court ordered the jury sequestered in a hotel for the night.

That night, while the jurors were asleep, a burglar made an unforced entry into two of the jurors' rooms with a pass key and snatched several small, easily concealed items.[2] The next morning, the four juror victims, including the foreman, were separately interviewed by the police at the hotel. The police asked the rest of the jurors to check their valuables. All twelve jurors discussed the burglary among themselves and knew which jurors had been burglarized. Later that morning, the jury resumed deliberations over defense counsel's objection. Despite the foreman's prediction the night before that a verdict could not be reached within an hour, the jury returned a unanimous guilty verdict less than one hour after they began deliberating. Two of the four jurors who had voted "not guilty" the night before were victims of the burglary.

Defense counsel moved for a mistrial, arguing that the burglary biased the jury against Hunley. The trial judge conducted an *in camera* hearing in order to determine whether the burglary had tainted the deliberations and affected the verdict. At the hearing, both the trial judge and defense counsel questioned each juror individually concerning the burglary and its impact on his or her decision. Each juror stated that the burglary did not affect his or her decision to return a guilty verdict. Most of the jurors, however, expressed concern over the incident.

---

1. Before the jury was recessed for the evening, a fifth juror also voted "not guilty." However, according to this juror, she changed her mind just before she fell asleep that night.

2. The burglar stole the foreman's $200 gold watch and several hundred dollars in traveler's checks. His roommate lost $87. The burglar also took $10 from another juror and $24 from her roommate. Additionally, a fifth juror stated that in the middle of the night she heard someone outside her door attempting to gain entry into her room.

The trial judge denied Hunley's motion for a new trial, concluding that the jury deliberated in good faith and that their verdict was not adversely affected by the burglary. In so concluding, the trial judge reasoned that the strong evidence of Hunley's guilt decreased the likelihood that the burglary caused the jurors to return a guilty verdict. The court then denied Hunley's post-trial motions and sentenced him to forty years' imprisonment. The Illinois appellate court affirmed Hunley's conviction, 189 Ill.App.3d 24, 136 Ill.Dec. 664, 545 N.E.2d 188 (1st Dist.1989), and the Illinois Supreme Court denied leave to appeal, 129 Ill.2d 568, 140 Ill.Dec. 677, 550 N.E.2d 562 (1990).

After exhausting his state court remedies, Hunley filed a writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2254. He asserted two claims for relief in the petition: (1) that the prosecutor's comments during her rebuttal argument deprived him of a fair trial; and (2) that the burglary of the jurors violated his right to be tried by a fair and impartial jury. The district court granted Hunley's petition on the ground of juror bias, but not on the ground of prosecutorial misconduct. The state filed a motion for reconsideration, which the district court denied. This appeal followed.

## II. Analysis

We review *de novo* the district court's grant of a petition for a writ of habeas corpus. *Freeman v. Lane*, 962 F.2d 1252, 1256 (7th Cir.1992) ("[o]ur review of the district court's decision to issue a writ of habeas corpus is plenary"). In his petition, Hunley contended that the burglary of four jurors during deliberations denied him his constitutional right to a fair and impartial jury. After a hearing, the Illinois trial court concluded that none of the individual jurors were biased and that the deliberations were not tainted by the burglary. Nonetheless, the federal district court imputed bias to the jurors, reasoning that the circumstances of the case required a finding of implied bias. The state challenges the district court's application of a presumption of bias to this case. It con-

tends that the district court erroneously invoked the doctrine of implied bias in order to evade the requirement under 28 U.S.C. § 2254(d) that reviewing courts accord state factual findings a presumption of correctness.

Use of the "implied bias" doctrine is certainly the rare exception. Although a defendant's right to be tried by a fair and impartial jury is guaranteed by the Sixth Amendment (applicable to Illinois through the Fourteenth Amendment), *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961), the Supreme Court has made it clear "that due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982). Rather, in most cases, the redress for assertions of jury bias is a hearing in which the defendant is afforded the chance to prove actual bias. *Id.* at 215, 102 S.Ct. at 945. Moreover, on federal habeas review, state court findings concerning an individual juror's impartiality are factual determinations entitled to a presumption of correctness, unless one of the circumstances listed in § 2254(d)(1)–(7) exists. *See Patton v. Yount*, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984); *Burton v. Johnson*, 948 F.2d 1150, 1157 (10th Cir.1991).

While the Supreme Court has held that the question of whether an individual juror is biased is a factual determination entitled to deference on review, it has never "precluded the use of the conclusive presumption of bias" in "extreme" or "extraordinary cases." *Smith*, 455 U.S. at 223, 102 S.Ct. at 949 (O'Connor, J., concurring). *See also Tinsley v. Borg*, 895 F.2d 520 (9th Cir.1990). In fact, "[i]n the exceptional circumstances that may require application of an "implied bias" doctrine, the lower federal courts need not be deterred by 28 U.S.C. § 2254(d)." *Smith*, 455 U.S. at 222 n*, 102 S.Ct. at 949 n* (O'Connor, J., concurring). Whether a juror's partiality may be presumed from the circumstances is a question of law. *Burton*, 948 F.2d at 1158. *See also Smith*, 455 U.S. at 222 n*,

102 S.Ct. at 949 n* ("[i]n those extraordinary situations involving implied bias, state-court proceedings resulting in a finding of "no bias" are by definition inadequate to uncover the bias that the law conclusively presumes"). Thus, the question this court must decide is whether the district court correctly concluded that this case presented "exceptional circumstances" which justified application of a presumption of bias. If this is not such a case, then the state court's finding of no bias is conclusive.[3]

The parties have not cited, nor have we found, any cases on point. A review of the types of cases where courts have refused to find, or have found, implied bias is therefore instructive. The Supreme Court has declined to find implied bias in the following cases: *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (state post-trial hearing sufficient to determine effect of juror's *ex parte* communication with judge on juror's deliberations); *Smith*, 455 U.S. at 215, 102 S.Ct. at 945 (juror's submission during trial of an application for employment as a felony investigator in the District Attorney's office did not require finding of implied bias); *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954) (attempted bribe of juror for favorable verdict did not require finding of implied bias); *Dennis v. United States*, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950) (juror's employment with federal government did not warrant a finding of implied bias). *See also Britz v. Thieret*, 940 F.2d 226, 231 (7th Cir.1991) (automatic exclusion of prospective juror who has been exposed to defendant's prior criminal record through pretrial publicity is not constitutionally mandated); *Tinsley*, 895 F.2d at 528–29 (collecting cases where courts have refused to find implied bias).

On the other hand, courts have been inclined to presume bias in "extreme" situations where the prospective juror is connected to the litigation at issue in such a way that is highly unlikely that he or she could act impartially during deliberations. Thus, courts have presumed bias in cases where the prospective juror has been the victim of a crime or has experienced a situation similar to the one at issue in the trial. *See Burton*, 948 F.2d at 1159 (a juror, sitting in a murder trial where the defendant's defense was battered wife syndrome, was presumed to be biased because juror herself was involved in an abusive family situation at the time of the trial); *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir.1979) (court presumed that juror whose sons were currently imprisoned for heroin-related crimes could not remain impartial during heroin conspiracy trial); *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir.1977) (court presumed bias of jurors who worked in one of the banks that defendant was charged with robbing); *Jackson v. United States*, 395 F.2d 615, 617–18 (D.C.Cir.1968) (court considered juror presumptively biased because he had been a participant in a "love-triangle" analogous to the one at issue in trial); *United States ex rel. De Vita v. McCorkle*, 248 F.2d 1, 8 (3d Cir.1957) (en banc) (court imputed bias to juror in a robbery case because juror was victim of a robbery prior to trial).

Because of the very unusual circumstances of Hunley's case, the district court correctly concluded that the facts here present a situation in keeping with the cases in which the courts were willing to apply a presumption of bias. The burglary placed the jurors in the shoes of the victim just before she was murdered. The state's theory at Hunley's trial was that Hunley made an unforced entry with a key into Tyson's apartment, intending to steal small, concealable items, but, when she unexpectedly arrived home and startled him, he killed her. These facts are profoundly similar to the jurors' experience during sequestration. During the night a burglar made an unforced entry with a pass key

---

**3.** Hunley does not contend that any of the exceptions to the § 2254(d) presumption of correctness are applicable to this case. *See* 28 U.S.C. § 2254(d)(1)–(7). He argues only that the circumstances of this case justified the district court's holding that the jurors were presumptively biased against him.

into two rooms housing four of the jurors and stole small, easily concealed items.

The respondents contend that the cases in which bias was presumed are different because in those cases the jurors were victimized before *voir dire*, while in this case the jurors were burglarized during deliberations. Although the courts did not presume bias in those cases because of the timing of the juror's victimization, if anything the timing in this instance exacerbates the situation even more. In several cases the courts implied bias because of the juror's personal involvement in a situation similar to the one at issue in the trial. *See Allsup*, 566 F.2d at 71 ("[t]he potential for substantial emotional involvement, adversely affecting impartiality, is evident when the prospective jurors" have been closely involved in a situation similar to the one on trial). In fact, as the district court noted, this case may present an even more compelling reason for applying the presumption of bias as "it is reasonable to assume that a juror who has been victimized during deliberations is more likely to harbor actual bias than a juror who has been victimized years earlier." *U.S. ex rel. Hunley v. Godinez*, 784 F.Supp. 522, 532 (N.D.Ill.1992). Here the jurors were initially accepted as being satisfactory, but the robberies during sequestration could easily affect their previously unbiased attitude.

Next, the state argues that, in contrast to this case, the courts applied the presumption of bias in the *voir dire* cases because the jurors intentionally concealed their past victimization or connection to the case on trial. While the juror's intentional concealment was a factor in the *voir dire* cases, the critical inquiry was whether the juror had a connection with the case in which the "potential for substantial emotional involvement, adversely affecting impartiality" was inherent. *Allsup*, 566 F.2d at 71. *See Burton*, 948 F.2d at 1159 ("inherently prejudicial nature of her [the juror's] own family situation deprived" the defendant of a trial by a fair and impartial jury); *Eubanks*, 591 F.2d at 517 ("[r]egardless of the reason for Collins' [the juror] non-disclosure, we conclude that his sons' tragic involvement with heroin bars the

inference that Collins served as an impartial juror" in heroin conspiracy trial).

The limited and unique circumstances of this case justify application of the presumption of bias. The combination of the following facts, as noted by the district court, constitutes an "extreme situation": (1) the jury was burglarized during deliberations and while sequestered; (2) the striking similarity between the jury burglary and the prosecution's theory of the case placed the jurors directly in the victim's situation before she was murdered; (3) this was a close case anyway since Hunley's first trial ended in jury deadlock; (4) before the burglary, the jury stood 8 to 4 in favor of conviction, however after the burglary, the four holdout jurors, two of whom were victims, quickly changed their votes to guilty; (5) before final deliberations resumed, all twelve jurors were notified of the burglary and expressed concern over the incident. In short, the combination of all these factors warrants a presumption of bias. In so concluding, we note that our holding is limited to the very unique facts stated herein and that this case should not be construed as adopting a *per se* rule that the court presume bias when a juror is victimized during trial. Cf. *Tinsley*, 895 F.2d at 527 ("[p]rudence dictates that courts ... should hesitate before formulating categories of relationships which bar jurors from serving in certain types of trials"). It is unlikely these rare circumstances will ever recur. Likewise, the "implied bias" test should rarely apply.

### III. Conclusion

For the reasons stated, we AFFIRM the district court's grant of the writ on the ground that Hunley was denied a trial by an impartial jury. Therefore, Hunley must be released from custody unless he is retried within 120 days of the issuance of the mandate of this court. *Freeman*, 962 F.2d at 1262. We express no opinion on the merits of Hunley's prosecutorial misconduct claim.